IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARL BRDAR and VICKI BRDAR,** | ) |
| **Plaintiffs,** | ) ) ) |
| vs. | ) CIVIL NO. 05-402-GPM ) |
| **COTTRELL, INC., CASSENS & SONS, INC., CASSENS CORPORATION, NISSAN NORTH AMERICA, INC., UNKNOWN COMMERCIAL LESSORS, DAIMLERCHRYSLER CORPORATION, and GENERAL MOTORS CORPORATION,** | ) ) ) ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter came before the Court on March 20, 2006, for a hearing on motions for summary judgment filed by Defendants General Motors Corporation (GM) and DaimlerChrysler Corporation (DCC). For the following reasons, Defendants' motions (Docs. 66, 119) are **GRANTED**.

Plaintiff Carl Brdar[1] was a car hauler for Cassens Transport Company, which is not a party to this action. He injured his right shoulder during the operation of a chain and ratchet tie down securement system to tighten a Nissan vehicle on a trailer manufactured by Defendant Cottrell, Inc. His injuries have nothing to do with any GM or DCC vehicle. Nonetheless, in the amended complaint, Plaintiff includes a claim for negligence against GM and DCC, claiming that GM and

---

[1] For simplicity, the Court refers to Carl Brdar as "Plaintiff" herein, even though there are two plaintiffs in this action.

DCC required, as a condition of transporting their vehicles, the use of trailers equipped with the chain and ratchet tie down system and that by requiring such a system, GM and DCC owed a duty to Plaintiff to ascertain whether said system would be reasonably safe and further assumed a duty to participate in the design and testing of the system.  The amended complaint also includes Plaintiff's claim for punitive damages and his wife's claim for loss of consortium against GM and DCC.  GM and DCC argue that they are entitled to summary judgment because they owed no duty to Plaintiff.

The standard applied to summary judgment motions filed under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows.

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party.  Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.  The evidence must create more than some metaphysical doubt as to the material facts.  A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted).  During the hearing, Plaintiff, GM, and DCC stipulated that Illinois law applies to these motions.[2]

To state a cause of action for negligence under Illinois law, a plaintiff must show that (1) the

---

[2] Practically speaking, the following analysis is based upon such basic negligence principles that there is no conflict between Illinois and Tennessee law to necessitate a choice-of-law analysis.

defendant owed him a duty of care; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries. *Staples v. Krack Corp.*, 186 F.3d 977, 979 (7th Cir. 1999), *citing Ward v. Kmart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990). Whether a duty exists is a question of law. *Staples*, 186 F.3d at 979, *citing LaFever v. Kemlite*, 706 N.E.2d 441, 446 (Ill. 1998). "In determining whether a duty exists, a court must 'consider not only the reasonable (1) foreseeability and (2) likelihood of injury, but also (3) the magnitude of the burden on defendant in guarding against injury and (4) the consequences of placing that burden on defendant.'" *Staples*, 186 F.3d at 979, *quoting LaFever*, 706 N.E.2d at 446.

By contrast to the question of duty, Illinois courts are reluctant to decide proximate cause as a matter of law. *Suzik v. Sea-Land Corp.*, 89 F.3d 345, 349 (7th Cir. 1996). The element of proximate cause depends upon the concept of foreseeability. *Id.* at 348. If the accident that injures the plaintiff is not of the kind that the defendant could have foreseen, a court may decide proximate cause as a matter of law. *Id.* at 350, *citing Cannon v. Commonwealth Edison Co.*, 621 N.E.2d 52, 54 (Ill. App. Ct. 1993).

Plaintiff makes much of the facts of this case, and the parties have submitted voluminous exhibits in support of their respective positions. However, nothing that Plaintiff has presented creates a genuine issue of *material* fact with respect to the issue of proximate cause. Plaintiff's theory is that GM and DCC created the dangerous condition, *i.e.*, the chain and ratchet tie down system, via their requirement that the auto transporting companies use it when hauling GM and DCC vehicles. The theory continues that GM and DCC could reasonably foresee a driver being injured using this type of system, even when hauling another type of vehicle. But *even if* GM and DCC did create a dangerous condition by requiring that their vehicles be transported using a specific

securement system to avoid damage to their vehicles, they could not reasonably foresee an accident resulting from a driver securing a Nissan vehicle because GM and DCC have nothing to do with how a Nissan is secured for transport. The 2003 deposition of Elwood Feldman, who was employed by Cottrell since 1978 and participated in the design of Cottrell trailers, contains nothing to the contrary. Having read the Feldman deposition in its entirety, it is clear that Cottrell designs the trailers, taking into consideration the securement systems specified by each car manufacturer in order to make its trailers marketable to its customers, the auto transporting companies. He testified that GM, DCC, Ford, Toyota, and Nissan each has a shipping manual and, consequently, has "indirect" input into Cottrell's design. But when questioned about the car manufacturers' hauling requirements, Mr. Feldman expounded on the extent of the manufacturers' input on design.

> Q. And certainly if there was any objection you would have to those parameters, by "you" I mean Cottrell, that Cottrell would have to any parameters that they were attempting to fulfill, Cottrell would state, would offer those objections and state these designs cannot be performed for whatever reason?
> "We cannot fulfill those parameters"?
>
> MR. HOWARD:[3]  Object; calls for speculation on the part of the witness.
>
> A. If it was something that was not, that was not attainable we would, we would go back to that manufacturer and, and talk to them about that particular issue, yes.
>
> Q. And ultimately you would address that issue, your design engineers would address that issue in order to formulate a proper design that would comply with those parameters, but it would ultimately be Cottrell's design?
>
> MR. HOWARD: Objection; calls for legal conclusion.
>
> A. Most likely, yes.

(Doc. 125, Ex. A, 81:18 through 82:15). As an initial matter, Mr. Howard's objections are

---

[3] Mr. Howard represented Cottrell at the deposition. Elwood Feldman was tendered as Cottrell's corporate representative in cases that did not involve the current accident.

overruled. Mr. Feldman was intimately involved in the design process; he had the requisite knowledge to answer these questions. Moreover, it is clear from the deposition what he meant by "design" and he could testify to such. It is clear that the car manufacturers have certain specifications for hauling their vehicles to ensure that the vehicles are not damaged during transport. In an effort to make the trailers marketable, Cottrell designed the trailers to be used universally to accommodate all brands of vehicles to be hauled. (*See, e.g., Id*. at 64:3-5, 21:7-11). This was done to benefit Cottrell in selling its trailers and the transporting companies in being able to haul different manufacturers' products using the same trailer. There is no evidence that GM or DCC cared if the trailer that hauled their vehicles could haul any other vehicle. GM and DCC were concerned with their products being transported using a securement system that did not damage their products and that did not fail. Plaintiff's attempt to tie GM and DCC to any design decision and, by extension, make them liable for an injury that occurred to a driver while transporting a Nissan vehicle fails. Such injury simply was not foreseeable.

     During the hearing, GM and DCC posited that proximate cause is lacking, but they seek a ruling on duty. This likely is a strategic decision to add to their cache of decisions regarding duty so that they will have more support for their position the next time one of these cases is filed and it is a GM or DCC vehicle that is involved in the injury. But the Court sees no reason to reach an issue that is not pertinent to these Defendants. It will address the issue of duty when Nissan files its motion for summary judgment, which, as indicated during the hearing, will be forthcoming.

     As Plaintiff is unable to establish his negligence claim against GM and DCC as a matter of law, his punitive damage claim and his wife's loss of consortium claim against them necessarily fail.

Accordingly, GM and DCC are **DISMISSED with prejudice** from this action.[4]

**IT IS SO ORDERED.**

DATED:  03/30/06

s/ G. Patrick Murphy<br>
G. PATRICK MURPHY<br>
Chief United States District Judge

---

[4]Notably, no cross claims for contribution have been filed in this action.